**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ABINGDON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Case No. 0423 1:19CR00011-004** |
| | ) | |
| **CLAYTON LEE TATE,** | ) | |
| | ) | |
| **Defendant** | ) | |

## DEFENDANT CLAYTON LEE TATE'S
## MOTION FOR SENTENCE GUIDELINE DEPARTURE AND
## SENTENCING MEMORANDUM

### INTRODUCTION

As explained below, Clayton Lee Tate ("Mr. Tate"), the defendant herein, should receive departure from the U. S. Sentencing Guidelines, now advisory, for his role in the offenses to which he pled guilty. Specifically, he should receive a sentence no greater than the 10 year minimum mandatory term required by statute, 21 U.S.C § 846(b)(1)(A). It is respectfully submitted that if the Court were to sentence Mr. Tate to any sentence greater than 10 years, it would amount to a miscarriage of justice and an unwarranted disparity in sentencing. It is Mr. Tate's hope that the Court will not countenance such a result for the reasons discussed below.

## BACKGROUND AND PROCEDURAL HISTORY

On February 26, 2019, a grand jury for the Western District of Virginia, sitting in Abingdon, returned a three-count Indictment in which Mr. Tate and others, were charged with violating federal drug trafficking laws. On August 5, 2019, Mr. Tate entered guilty pleas to two counts of the three-count Indictment (Counts 1 and 3). Count 1 of the Indictment charged conspiracy to possess with the intent to distribute 50 grams or more of methamphetamine; Count 3 charged distribution and possession with intent to distribute 50 grams or more of methamphetamine. Pursuant to a written plea agreement the parties agreed to a base offense level of 32 on the drug charges. The probation officer correctly determined that Mr. Tate faces a discretionary sentence of 121 to 151 months incarceration to be followed by a period of supervised release. Significantly, however, only 10 years of the discretionary guideline range is a minimum mandatory sentence.

## DISCUSSION

It is now well-established that the Court should perform the following four steps when sentencing a defendant: (1) Calculate the sentencing range recommended by the Advisory Guidelines; (2) determine whether a sentence within that range, and within statutory limits serves the factors set forth in 18 U.S.C. § 3553(a), and, if it does not, select a sentence that does serve those factors; (3) implement any applicable mandatory statutory limitations; and (4) articulate the reasons for selecting the particular sentence, and if applicable, explain why a sentence outside the Advisory Guidelines range better serves the relevant sentencing purposes set forth in 18 U.S.C. § 3553(a). *See Gall v. United States,* 552 U.S. 38, 51 (2007); *United States v. Mendoza-Mendoza,* 597 F.3d 212, 216 (4th Cir. 2010); *United States v. Moreland,* 437 F.3d 424, 432 (4th Cir. 2006); *United States v. Green,* 436 F.3d 449, 456 (4th Cir. 2006).

**A.** **Although a 10-year Sentence is not Within the Advisory Guidelines for the Offenses, it is Within the Contemplation of Congress when it enacted the Statute.**

While the PSR correctly assigns Mr. Tate a Total Offense Level of 29, a Criminal History Category of IV, and a corresponding Advisory Guidelines range of 121-151 months, the statute enacted by Congress also contemplates a 10-year minimum mandatory term. Although the Plea Agreement accounts for the possibility of a term of imprisonment consistent with the guideline range, it is respectfully submitted that a sentence of 10 years is more than sufficient and is consistent with the ends of justice in this case.

**B.** **Consideration of the Section 3553(a) Factors Warrants a Sentence of Probation.**

In conducting the second step of the sentencing process, "the Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a). The Court should consider, among other factors, (1) the nature of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the events, to promote respect for the law, to provide just punishment for the offense, to provide adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed training, medical care, and/or correctional treatment; (3) the kinds of sentences available; and (4) the need to avoid unwarranted sentencing disparities among defendants. *Id.* The last factor alone compels a 10 year minimum mandatory sentence in this case.

**i.** **Nature and Circumstances of the Offense.**

As the PSR indicates, Mr. Tate was involved in drug trafficking and counterfeiting, but not on a major scale. Mr. Tate participated in drug distribution primarily to support his habit.

## ii.     History and Characteristics.

Mr. Tate, age 39, was born on June 11, 1980, in Wytheville, Virginia. He was raised in a stable environment. His parents separated but never divorced. He was raised by his paternal grandmother, Ruby Tate. Mr. Tate is single and has never been married. He has three children by two previous relationships. Mr. Tate has a Criminal History Category of IV.

Mr. Tate began using drugs and alcohol when he was 15. He has a GED degree which he earned at NRVCC in 2007. The last grade Mr. Tate successfully completed was seventh grade. Suffice it to say he never really had much going for him, but he was employed since 2013 at Virginia City Farms prior to his incarceration.

As described in the attached letters of support, which are attached to this Memorandum as Exhibits 1 through 7, Mr. Tate has always been kind, considerate, respectful, and helpful. But, again the common theme in all of them is that he did not have much going for him or a lot of support at home.

As the Court will see, several individuals have submitted letters to the Court attesting to Mr. Tate' good character and upbringing which was severely handicapped and compromised. Their message is clear that Mr. Tate grew up on the wrong side of the tracks with little support or much going for him despite which he still has some positive traits which now need to be refocused in the right direction. Ten years is more than sufficient to accomplish those objectives. The Guidelines do not take these factors into consideration. Respectfully, the Court should under 18 U.S.C. §§ 3661 and 3553(b).

## iii. Seriousness of the Offense, Just Punishment, and Adequate Deterrence.

Mr. Tate has already suffered immensely for his crimes. He has been detained for more than 8 months since his arrest following indictment. He has been deeply hurt and disappointed his family, and friends, despite which they continue to love and support him. He is extremely

remorseful and will hopefully never be before this or any other court again. Taking these unique factors into account, it is respectfully submitted that the Court should conclude that a sentence of 10 years provides just punishment for the offenses. Given the enormous price Mr. Tate has already paid, a 10 year minimum mandatory sentence will also provide more than adequate deterrence – both to Mr. Tate, specifically, and to the public, generally. Insofar as general deterrence is concerned, Mr. Tate's felony plea, public humiliation and 10 year sentence will serve as a stern and lasting reminder of the perils of this type of conduct.

### iv. Kinds of Sentences Available.

The advisory guidelines applicable in this case authorize a range of punishment of 121-151 months in prison. Mr. Tate's role in the offense warrant no more than a 10 year sentence.

### v. Unwarranted Disparities.

Most importantly, a sentence of 10 years in this case would avoid unwarranted disparities among others who have committed the same or similar crimes.

As the Court well knows, other defendants similarly situated in federal courts throughout this country have been sentenced to the minimum mandatory term rather than an increased term under the guidelines. Any greater sentence would result in a gross disparity in sentencing, amount to a miscarriage of justice, and undermine confidence in the notion of fair and just sentencing for those who commit the same or similar crimes.

### CONCLUSION

Mr. Tate understands the discretion this Court has in sentencing. Whatever sentence the Court imposes, Mr. Tate accepts full responsibility for his actions which brought about this indictment. Mr. Tate, nevertheless, asks this Court to consider that he has many redeeming qualities, that he's been a good son, grandson, employee, mentee and friend; that he cares for other people; that he has already suffered immeasurably on account of his actions; that he is

extremely remorseful; that he hopefully will never be before this or any other court again after a 10 year period of incarceration and treatment in the BOP's therapeutic community while in prison. In short, if Mr. Tate is incarcerated for more than 10 years, in all likelihood he would be totally destroyed and punished far beyond the level of his wrong doing.

Mr. Tate respectfully asks this Court to grant a variance under the Guidelines and sentence him to 10 years for the reasons discussed herein.

CLAYTON LEE TATE

By counsel

/s/ Thomas R. Scott, Jr., Esq.
STREET LAW FIRM, LLP
P. O. Box 2100
1142 Riverview Street
Grundy, VA 24614
Tele: (276) 935-2128
Email: trs@streetlawfirm.com
VSB # 16513
*Attorney for Clayton Lee Tate*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 9th day of December, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/Thomas R. Scott, Jr.
Thomas R. Scott, Jr.
